[Civ. No. 11725. First Dist., Div. One. Feb. 6, 1942.]

J. R. ARMSTRONG, Respondent, v. WILLIAM SMITH, Appellant.

Maurice R. Carey and John A. Gorfinkel for Appellant.

Myron Harris for Respondent.

JONES (B. C.), J. pro tem.—In this case the appeal is from an order denying a motion for a change of venue to the county of the defendant's residence.

On the 5th of January, 1938, the plaintiff and the defendant entered into a contract whereby the plaintiff undertook to construct a multiple dwelling house for the defendant on a lot in the city of Oakland, county of Alameda. The contract, in a form usually employed by builders, was prepared and executed by the parties in San Francisco. At the time the action was brought the defendant resided in the county of San Mateo. There are no express stipulations in the contract as to where any of its covenants are to be performed, except that the plaintiff so bound himself to build on the lot in Alameda County.

Against this obligation the law implied a promise on the part of the defendant to so permit him to build and according to the details of the contract. (*Gray* v. *Bekins,* 186 Cal. 389 [199 Pac. 767].)

The plaintiff commenced an action in the Superior Court of Alameda County on November 25th, 1940, seeking to re-

cover damages for a breach of the contract. In paragraph IV of his complaint he alleges that although he, plaintiff, is ready and able to perform, "plaintiff has been prevented from so doing by the neglect, failure and refusal of the defendant to perform said contract on his part and by the refusal of the defendant to allow plaintiff to further perform the same on his part." The defendant demurred to the complaint, and gave notice of a motion for a change of place of trial to the county of his residence. This notice was supported by proper affidavits. The motion came on regularly for hearing and was denied, and it is from this order that the defendant appeals.

The breach alleged is that of an implied obligation arising under the contract. By its terms the plaintiff agreed to build a house for the defendant in Alameda County for which the defendant agreed to pay a stipulated price. This much was expressly agreed to. In addition certain implied obligations arose out of the contract, each of the parties impliedly agreeing not to interfere with full performance by the other. It is upon the alleged breach of the defendant's obligation in this respect that plaintiff seeks to recover.

The appeal calls for an interpretation of section 395 of the Code of Civil Procedure. Subd. (1) of said section, the only part with which we are here concerned, reads as follows: "In all other cases, except as in this section otherwise provided, and subject to the power of the court to transfer actions or proceedings as provided in this title, the county in which the defendants, or some of them, reside at the commencement of the action, is the proper county for the trial of the action. If the action be for injury to person, or to personal property, or for death from wrongful act, or negligence, either the county where the injury occurs, or where the injury causing death occurs, or the county in which the defendants, or some of them, reside at the commencement of the action, shall be a proper county for the trial of the action. When a defendant has contracted to perform an obligation in a particular county, either the county where such obligation is to be performed, or in which the contract in fact was entered into, or the county in which the defendant, or any such defendant, resides at the commencement of the action, shall be a proper county for the trial of an action founded on such obligation, and the county in which such obligation is incurred shall be deemed to be the county in which it is to be

performed unless there is a special contract in writing to the contrary. If none of the defendants reside in the State, or, if residing in the State, and the county in which they reside is unknown to the plaintiff, the action may be tried in any county which the plaintiff may designate in his complaint, and if the defendant is about to depart from the State, such action may be tried in any county where either of the parties reside, or where service is had. If any person is improperly joined as a defendant, or has been made a defendant solely for the purpose of having the action tried in the county, city and county, township, city or town where he resides, his residence must not be considered in determining the proper place for the trial of the action.''

That portion of the said subdivision dealing with the venue of actions arising upon contract and which we are called upon to interpret is the third sentence thereof which reads: ''When a defendant has contracted to perform an obligation in a particular county, either the county where such obligation is to be performed, or in which the contract in fact was entered into, or the county in which the defendant, or any such defendant, resides at the commencement of the action, shall be a proper county for the trial of an action founded on such obligation, and the county in which such obligation is incurred shall be deemed to be the county in which it is to be performed unless there is a special contract in writing to the contrary.''

If it were provided only that when a defendant has contracted to perform an obligation in some particular county, the county in which it is to be performed, or the county in which the contract was entered into, or the county in which the defendant resides, shall be a proper county for the trial of an action upon an obligation growing out of the contract, no difficulty would be presented. In such a case either one of the three counties mentioned would be a proper county for the trial of such an action.

But the legislature did not stop there. It added a limitation, and the limitation which it added is this: ''the county in which such obligation is incurred shall be deemed to be the county in which it is to be performed.'' The effect of the limitation is to cut down the number of counties in which an action may properly be tried to two, namely, the county in which the defendant resides, and the county in which the contract was made.

Having set up the limitation, the legislature created an

exception to it, providing that if it be specially contracted in writing as to the county of performance, such county is also a proper county for the trial of an action. Under conditions where the exception is effective, the number of proper counties goes back to three.

No great consequence is to be attached to the general limitation of the section that ''When a defendant has contracted to perform an obligation in a particular county,'' the other provisions are to apply. Obviously, an existing obligation is performable at some place. If it is of such character that it is to be, or may be, performed in different counties no different situation is created than if it is to be performed at a particular place. The express condition of the statute is that unless there is a special contract in writing to the contrary the county in which the obligation is incurred is the venue of an action arising out of it. ■ What the legislature has in substance said is that all actions arising on contract shall be tried in the county in which the defendant resides, or in which the contract was made, unless the defendant has contracted specially and in writing as to the county in which his obligation is to be performed, in which event such county is also a proper county for the trial of the action.

It is suggested by the respondent that since the breach of the obligation made the basis of the action occurred in Alameda County, it follows that the obligation relied on was incurred there. The obligation of a contract as distinguished from the contract itself, has been variously defined by the courts of the different states, including our own, but all to the same point. Of such definitions that found in *Aycock* v. *Martin*, 37 Ga. 124 [92 Am. Dec. 56], is appropriate to the contention made by the respondent. The court there said: '' 'The obligation of a contract is a legal, not a mere moral obligation: it is the law which binds a party to perform his undertaking. The obligation does not inhere or subsist in the contract itself, *proprio vigore*, but in the law applicable to the contract.' 1st Bouvier's Law Dictionary, 652, and authorities there cited. When the parties entered into the contract now before the Court which the plaintiff seeks to enforce, what was the legal obligation of the defendant? His legal obligation was, to do and perform, just what the laws of the land, applicable to the contract, required him to do and perform, at the time the contract was made, in accordance with its terms and stipulations: that was the exact mea-

sure of his legal obligation at the time the contract was made; nothing more, nothing less. The defendant's legal obligation was to perform his contract, as the laws of the land, applicable to that contract, required him to perform it, at the time it was made. That was the extent of his legal obligation to the plaintiff, and just to that extent the plaintiff had the legal right to have it performed, in order to maintain the integrity of the legal obligation of the defendant's contract. If it was not the existing law of the State, applicable to the contract at the time it was made, which created and defined the defendant's legal obligation to perform it, in accordance with its terms and stipulations, what is it that does create and define his obligation to perform it? If there had been no existing law applicable to the contract, prescribed by the supreme power of the State, at the time it was made, creating and defining the defendant's obligation to perform it, then he would have incurred no other than a mere moral obligation, over which human tribunals have no jurisdiction. It therefore necessarily follows, that the existing law applicable to the contract, prescribed by the supreme power of the State, at the time the contract was made, creates and defines the defendant's legal obligation to perform it, in accordance with its terms and stipulations. 'A perfect right is that which is accompanied by the right of compelling those who refuse to fulfil the correspondent obligation. A perfect obligation is that which gives to the opposite party the right of compulsion.' Vattel, 62. The defendant's obligation to perform his contract in accordance with its terms, was a perfect obligation, because the plaintiff, at the time the contract was made, had the legal right, under the then existing law of the State, to have compelled its performance. The defendant's obligation to perform his contract was just what that existing law made it, just what that existing law required, and would have compelled to be done for its performance, in behalf of the plaintiff, the other party to it. The defendant's obligation to perform his contract, under the then existing law, was perfect, and the plaintiff's right to have that obligation performed as prescribed by that existing law, was also a perfect right."

█ The obligation of a contract is incident to its making. It is incurred at the time the contract is made and follows it until the contract is extinguished. The obligation arises as soon as the contract takes breath and may be breached at any

time while it has life. While it is the law, in conjunction with the contract, which casts the obligation, the law does not wait until it is breached to cast it. This is done when the contract is made. So with the contract before us, all obligations arising under it were incurred at the time and in the county in which it was made.

Of primary importance is the question as to what kind of contract the legislature intended when it used the term "special contract." In *Gulick* v. *Justice's Court*, 101 Cal. App. 619 [281 Pac. 1031], a construction has been placed upon the term as it was used in a similar statute. In that case the defendant incurred an indebtedness to the plaintiff in that action in the township of Indio, in Riverside County. The defendant gave to the plaintiff a check dated at Los Angeles, in Los Angeles County, and payable there, in settlement of his obligation. Before this check reached the bank upon which it was drawn, payment was stopped by the defendant. Plaintiff filed suit in Indio Township where the indebtedness was incurred, alleging non-payment on the check. The demurrer of the defendant to the complaint was overruled, and he then sought in the superior court a writ of prohibition against the respondent court upon the ground among others that the venue of the action lay in Los Angeles County. In this respect it was urged by the defendant that the check constituted a special contract in writing payable and to be performed in Los Angeles, and not in the township of Indio where the obligation was incurred. Reliance was placed upon section 832 of the Code of Civil Procedure, as it then stood. This section provided: "Actions, where must be commenced. Actions in justices' courts must be commenced, and, subject to the right to change the place of trial, as in this chapter provided, must be tried: . . . 7. When a person has contracted to perform an obligation at a particular place, and resides in another county, township, or city——in the township or city in which such obligation is to be performed, or in which he resides; and the township or city in which the obligation is incurred is deemed to be the township or city in which it is to be performed, unless there is a special contract in writing to the contrary."

The legislature apparently borrowed the last clause of subd. 7 of section 832 and inserted it in section 395 of the Code of Civil Procedure, which is the section which we are now called upon to interpret, with only enough change to make it apply

to a county instead of a township. This was probably done for the purpose of securing uniformity in procedure and to obviate possible confusion between the trial of cases in the justices' and superior courts.

In the Gulick case it was held by the trial court that the check sued on did not constitute a special contract in writing within the meaning of the statute, and that the action was properly commenced in the township in which the obligation was incurred. The judgment was affirmed by the District Court of Appeal on appeal, and a petition to have the cause heard in the Supreme Court was denied by that court.

A special contract has been defined in other jurisdictions as one in which there is expressed particular stipulations with respect to the obligations of the parties, and which, if omitted, the law will not supply. (*Forester* v. *Forester,* 10 Ind. App. 680 [38 N. E. 426] ; *Jackson* v. *Creek,* 47 Ind. App. 541 [94 N. E. 416].) The law will come to the assistance of an express contract in order to give it enforceability where under the circumstances it ought to be enforced, but not so with a special contract. Nothing will be implied in its assistance. This distinction between an express contract and a special contract is pointed out in *Pence* v. *Beckman,* 11 Ind. App. 263 [39 N. E. 169, 54 Am. St. Rep. 505]. It was there held that under the Indiana Code, following the common-law rule, recovery might be had upon an averment of an express contract although an implied contract is proven, and for the reason that an implied obligation may arise upon an express contract but never on one which is special. This distinction is also made in *Indianapolis C. T. Co.* v. *Dalton,* 43 Ind. App. 330 [87 N. E. 552], where the holding is that a complaint may declare upon an express contract and a recovery be had upon an implied promise, but it cannot declare upon a special contract and recover upon an implied promise. The court there said, quoting from *Forester* v. *Forester, supra* : " 'An express contract is one whose terms are uttered or stated in words or writing. An implied contract is a matter of inference or deduction.' . . . 'A special contract is one with peculiar provisions or stipulations not found in the ordinary contract relating to the same subject-matter. These provisions are such which, if omitted from the ordinary contract, the law will never supply.' 'An express contract may or may not be special. But a special contract is always express.' "

536

■ As the court stated in *Gulick* v. *Justice's Court, supra:* "In using the words 'Special Contract' . . . the legislature must have had in mind some contract other than one ordinarily and usually used in every-day transactions of business life, otherwise the word 'Special' could have no significance, and need not have been inserted in the section." But we do not understand that the court here intended to say that there should be a separate contract special in its nature upon the same subject matter before the statute would apply, but that if there is embodied in the agreement giving rise to the action an express stipulation with respect to the obligation in question, the requirements of the statute are met. It is our opinion that before an action may be brought under section 395, *supra*, in the county where the obligation forming the basis of the suit is performable, the contract must specifically state the place of performance of such obligation. If the contract so states, then the provision as to place of performance is both express and special.

■ One of the cardinal rules to be applied in construing a statute is that the interpretation must be based on the language used. The court has no power to rewrite a statute to make it conform to an intention not expressed. As is said in *Seaboard Acceptance Corp.* v. *Shay*, 214 Cal. 361 [5 Pac. (2d) 882] : "It is elementary that there can be no intent in a statute not expressed in its words; that the intention of the legislature must be determined from the language of the statute. (*Ex parte Goodrich*, 160 Cal. 410 [Ann. Cas. 1913A, 56, 117 Pac. 451] ; *In re Application of the Monrovia Evening Post*, 199 Cal. 263 [248 Pac. 1017].)" A strained construction should not, however, be placed upon its words. The interpretation should always be reasonable and according to the common understanding of the language used, with a view to giving effect to all of its provisions if possible. This rule finds legislative expression in section 1858 of the Code of Civil Procedure, wherein it is provided: "In the construction of a statute or instrument, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all." A statute so interpreted is to be applied to the facts as presented. ■ If the parties have only impliedly agreed to a place of perform-

ance when the statute says that they should have specially agreed before the remedy sought may be obtained, no redress may be had. The court is powerless to redraft either the statute or their contract and do aught but apply the law to the facts as it finds them.

Sight must not be lost of the fact that on this appeal we are dealing solely with a question of venue. The enforceability of the contract is not in question, nor are any of the issues tendered by the complaint. The nature of the proceeding excludes all questions except as to whether Alameda County is a proper county for the trial of the action. The place of performance of the defendant's obligation sued on being implied, and not specially contracted, the county in which the obligation was incurred and the county of the defendant's residence are the only proper counties for the trial of the action.

The order appealed from is reversed.

Peters, P. J., and Ward, J., concurred.